

**IT IS ORDERED as set forth below:**

**Date: June 23, 2023**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | | |
|---|---|---|
| In re: | : | CASE NUMBER: |
| | : | |
| **FIRST LEADS AND MARKETING, INC.,** | : | **22-10245-PMB** |
| | : | |
| Debtor. | : | CHAPTER 7 |

_____

### ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S
### MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY

Before the Court is the *Trustee's Motion for Sanctions for Violation of the Automatic Stay* filed by James G. Baker as Chapter 7 Trustee (the "Trustee") for the Bankruptcy Estate of First Leads and Marketing, Inc. (the "Debtor") on May 4, 2023 (Docket No. 114)(the "Motion for Sanctions") against Your Insurance Group, LLC ("YIG"). YIG filed a *Response to Trustee's Motion for Sanctions for Violation of the Automatic Stay* on May 15, 2023 (Docket No. 122)("YIG's Response"). In addition, Darlene O. Stephens ("Ms. Stephens"), Michael Adam Garrett ("Mr. Garrett"), and Stephens Exclusives, Inc. (collectively, the "Defendants") filed *Darlene Stephens', Adam Garrett's, and Stephens Exclusives, Inc.'s Limited Response in Support*

*of The Trustee's Motion for Sanctions for Violation of The Automatic Stay* on May 15, 2023 (Docket No. 123)(the "Defendants' Response").[1]

An in-person hearing was held on the Motion for Sanctions on May 17, 2023 (the "Hearing").[2]    Present at the Hearing were the Trustee, counsel for the Trustee, counsel for YIG, and counsel for the Defendants.    At the conclusion of the Hearing, the Court allowed the parties to file a post-hearing brief and response.    The Trustee filed the *Trustee's Post-Hearing Brief in Support of Motion for Sanctions for Violation of the Automatic Stay* on May 26, 2023 (Docket No. 124)(the "Trustee's Post-Hearing Brief").    YIG filed its *Response to Trustee's Post-Hearing Brief in Support of Motion for Sanctions for Violation of the Automatic Stay* on June 2, 2023 (Docket No. 125)("YIG's Post-Hearing Response").

## **Background**

On March 4, 2022, the Debtor commenced the above-referenced case under Chapter 7 of Title 11, United States Code (the "Bankruptcy Code") creating an estate under 11 U.S.C. § 541 (the "Bankruptcy Estate").    Thereafter, on March 11, 2022, YIG filed a complaint in the United States District Court against the Debtor, Ms. Stephens, and Mr. Garrett.    (District Court Case No.

---

[1] Darlene O. Stephens ("Ms. Stephens"), is the former principal of the Debtor, Michael Adam Garrett ("Mr. Garrett") is her son, and Stephens Exclusives, Inc. d/b/a Uptown Exclusives is an entity owned by Ms. Stephens.    The Defendants are allegedly insiders of the Debtor.

[2] The Hearing was set on an emergency basis on the Trustee's *Motion for an Order Shortening Notice and for an Expedited Hearing on Trustee's Motion for Sanctions for Violation of The Automatic Stay* filed on May 4, 2023 (Docket No. 115).    *See Order Granting Trustee's Motion for Emergency Hearing and Notice of Hearing on Trustee's Motion for Sanctions for Violation of The Automatic Stay Regarding Your Insurance Group, LLC,* entered on May 5, 2023 (Docket No. 116); *see also Amended Order Granting Trustee's Motion for Emergency Hearing and Notice of Rescheduled Hearing on Trustee's Motion for Sanctions for Violation of The Automatic Stay Regarding Your Insurance Group, LLC,* entered on May 8, 2023 (Docket No. 118).

3:22-cv-00047, N.D. Ga.)(the "District Court Complaint").[3]   In the District Court Complaint, YIG

alleged that it did not receive certain services from the Debtor for which it had contracted and paid

because the Debtor's funds had been diverted by the Defendants to pay for the personal expenses

of Ms. Stephens and/or Mr. Garrett.   YIG states that, upon learning of the bankruptcy filing, it

dismissed the District Court Complaint without prejudice on April 8, 2022.

On October 3, 2022, the Trustee filed a *Motion for Order Authorizing Compromise and

Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Sale of Claims Pursuant

to Section 363* (Docket No. 63)(the "the "Settlement Motion").   In the Settlement Motion, the

Trustee sought to resolve all claims between the Trustee, the Debtor's Bankruptcy Estate, and YIG

through the sale and assignment of the Trustee's causes of action against the Defendants under

Chapter 5 of the Bankruptcy Code (to wit; 11 U.S.C. §§ 544, 547, 548, 549, and 550) to YIG.   On

February 15, 2023, the Court entered its *Order Denying Motion For Order Authorizing

Compromise And Settlement Pursuant To Federal Rule Of Bankruptcy Procedure 9019 And Sale

Of Claims Pursuant To Section 363* (Docket No. 111)(the "Order").

Subsequently, on April 11, 2023, YIG filed a *Complaint for Damages* (the "State Court

Complaint") against the Defendants in the Superior Court of Muscogee County, Georgia, initiating

Case No. SU2023CV000723 (the "State Court Case").   Though it does not name the Debtor, in

the State Court Complaint, like in the District Court Complaint,[4] YIG seeks to recover funds it

paid to the Debtor based on alleged misrepresentations by the Defendants that Ms. Stephens and

---

[3] A copy of the District Court Complaint is attached to the Motion for Sanctions as Exhibit "A."

[4] A copy of the State Court Complaint is attached to the Motion for Sanctions as Exhibit "B."   YIG asserts that in the State Court Complaint it does not pursue any of the claims the Trustee previously sought permission to sell to YIG, which is disputed by the Trustee.

3

Mr. Garrett then caused to be diverted to pay for their own personal expenses to the detriment of

YIG.   The State Court Complaint contains the following fourteen (14) counts for relief:

Count I – Fraud;

Count II – Negligent Misrepresentation;

Count III – Conversion and Trover;

Count IV – Conspiracy;

Count V – Georgia Civil RICO;

Count VI – Promissory Estoppel;

Count VII – Unjust Enrichment;

Count VIII – Money Had and Received;

Count IX – Tortious Interference with Business Relations;

Count X – Tortious Interference with Contractual Relations;

Count XI – Equitable Accounting;

Count XII – Implied and/or Constructive Trust;

Count XIII – Expenses of Litigation, Attorneys' Fees, and Costs; and,

Count XIV – Punitive Damages (collectively, the "YIG Claims").

## Argument

In the Motion for Sanctions, the Trustee argues that the YIG Claims constitute property of

the Bankruptcy Estate, which includes all causes of action of the Debtor, and only the Trustee has

proper standing to assert them in accordance with 11 U.S.C. § 544(a).   Further, the Trustee

contends that although the allegations do not explicitly refer to the avoidance of a fraudulent

transfer, in essence the YIG Claims seek the same relief reserved to the Trustee under his

4

avoidance powers as provided under the Bankruptcy Code.   The substance of the allegations, not the labeling of the corresponding claims for relief, controls whether a claim is direct or derivative of the Bankruptcy Estate.   *See Hantz v. Belyew*, 194 F. App'x 897, 900 (11th Cir. Sept. 12, 2006)(direct or derivative nature of claim determined by state law); *see also Callicott v. Scott*, 357 Ga. App. 780, 786, 849 S.E.2d 547, 552 (2020)(citations omitted)(court looks to "nature of the wrong alleged" rather than "pleader's designation"); *Dunn v. Ceccarelli*, 227 Ga. App. 505, 508, 489 S.E.2d 563 (1997)(prayers for relief disregarded in favor of gravamen of the complaint).   In *Highland Capital Mgmt., L.P. v. Welsh, Carson, Anderson & Stowe, VI, L.P. (In re Bridge Info. Sys., Inc.)*, 344 B.R. 587, 590-91 (E.D. Mo. 2006)(also referred to by the Trustee as "Gleneagles"), for example, even though the insiders made alleged fraudulent statements to an objecting creditor directly, the injury itself, the transfer of funds out of the corporate debtor to an insider, affected every creditor and recovery would in essence benefit each of them as opposed to the objecting or suing creditor alone.[5]

On this basis, as supported by numerous, carefully detailed references to the factual allegations contained in the State Court Complaint (*see* Trustee's Post-Hearing Brief, ¶¶ 6-9)(such as depleting and diverting Debtor's assets at Defendants' direction, ignoring corporate formalities), the Trustee maintains that, similar to the facts in *Spiech Farms*, YIG is attempting to seek relief for itself on claims arising in connection with alleged conduct that in fact caused injury to all the

---

[5] *See also In re Spiech Farms, LLC*, 603 B.R. 395, 404 (Bankr. W.D. Mich. 2019)(each count in state court complaint, grounded in repeated allegations of insiders' diversion of assets to detriment of all creditors, constituted claims for fraudulent transfers and breach of fiduciary duties belonging to the estate).   Beyond the asserted legal theory for relief, the underlying facts and essence of the harm committed govern the analysis of a cause of action.   *Id*. at 405 (citations omitted).

Debtor's creditors and not just YIG.   *Spiech Farms, supra,* 603 B.R. at 404, 409, and 411.   YIG's tort claims, claims for fraud, and tortious interference with contract each incorporate allegations relating to diversion of assets, disregard of corporate form, misusing funds received from the creditor, and breach of fiduciary duty.   According to the Trustee, all the YIG Claims stem from alleged injuries to the Debtor corporation.[6]   The Trustee asserts that YIG cannot plead its way around the fact that its claims arise from the payment of money for services the Debtor failed to render because the Defendants caused the Debtor to *fraudulently transfer* those funds to the Defendants.[7]

The Trustee also urges that YIG's attempt to disguise its claims knowing that this Court had already denied YIG's attempt to purchase them as part of a settlement with the Trustee constitutes a clear violation of the automatic stay.[8]   YIG should not be allowed to engage in a "work around" that would effectively allow it to interfere in the Trustee's efforts to produce a recovery on these claims for the Bankruptcy Estate.[9]   Through the Motion for Sanctions, the

---

[6] As in *Spiech Farms, supra,* fraudulent misrepresentations *made to* the suing creditor, as claimed here by YIG, resulted in common injury affecting every creditor's right to be paid due to the breach of the duties owed by the principals (here the Defendants) to the debtor.   603 B.R. at 408.   YIG seeks to distinguish this case, where there admittedly was an overlap of claims, arguing that unlike the plaintiff in *Spiech Farms*, here YIG is not claiming that that the Debtor failed to pay all creditors.   Instead, YIG claims that the Debtor did pay some other creditors, using funds advanced by YIG to do so.

[7] *See also In re Tronox, Inc.*, 855 F.3d 84, 88, 100 (2d Cir. 2017)(beyond labels, claims of mismanagement and undercapitalization, leaving debtors with insufficient funds to pay creditors, were in the nature of fraudulent transfers and the suing creditors endured the same harm suffered by other creditors).   *See also In re C.D. Jones & Co.*, 482 B.R. 449, 454 (Bankr. N.D. Fla. 2012).

[8] As mentioned at the Hearing, YIG's contention that the automatic stay does not apply to suits against third party non-debtors, though generally true, is not relevant in this case.   Here, the alleged stay violation asserted by the Trustee is that YIG has usurped claims that only the Trustee can bring as property of the Bankruptcy Estate.

[9] *See In re Tessmer*, 329 B.R. 776, 780 (Bankr. M.D. Ga. 2005).

Trustee seeks an order holding YIG in contempt for violation of the automatic stay, requiring YIG to dismiss the State Court Complaint and assessing appropriate sanctions including attorneys' fees.

YIG counters that the YIG Claims seek damages for harm unique and particular to YIG and, as such, recovery on these individualized injuries may only be sought by YIG.   YIG asserts that the YIG Claims do not implicate the Trustee's powers under Section 544(a) because they arise from allegedly personal tortious conduct based on specific bad acts of the Defendants aimed at YIG.   As noted above, YIG insists it is not pursuing any of the claims included in the Settlement Motion that belong to the Bankruptcy Estate.   Rather, claims of fraudulent inducement result from the Defendants' exploitation of their personal relationships with YIG and further, benefitted creditors by enabling the Debtor's ongoing operations through payments made by YIG.[10]   YIG was the Debtor's sole customer and largest creditor.   Moreover, although the background facts in the State Court Complaint could also support claims by the Trustee, YIG notes that those same facts support YIG's assertion of its own direct claims and theories of recovery for the specific injuries it alone suffered.[11]

For their part, in the Defendants' Response, the Defendants agree with the Trustee that the YIG Claims are derivative of the Trustee's claims.   In connection with their analysis, the Defendants' assert that, in the event there is Chapter 5 liability, it will be for "garden variety" voidable preferential transfers unaccompanied by fraud, misrepresentation, or similar claims for relief, which claims are properly brought by the Trustee not YIG.   At the Hearing, however,

---

[10] *See In re Black Elk Energy Offshore Operations, LLC*, 2016 Bankr. LEXIS 2708, *9 (Bankr. S.D. Tex. July 26, 2016).

[11] *See e.g. In re Soundview Elite Ltd.*, 565 B.R. 534, 544 (Bankr. S.D. N.Y. 2017)(citations omitted).

7

counsel for the Defendants conceded that some of the claims asserted in the State Court Complaint may be specific to YIG.[12]

### Discussion

The reach of 11 U.S.C. § 541(a)(1) is broad, and a cause of action that a creditor could have pursued prior to commencement of a bankruptcy case becomes property of the estate once a case is filed if the claim derives from harm visited directly upon the debtor that the debtor could have pursued itself under applicable law.  *See Mennen v. Onkyo Corp.*, 248 F. App'x 112, 113 (11th Cir. Sept. 13, 2007).[13]   In other words, in that instance an injury to a creditor of the debtor arises indirectly from harm directed toward the debtor itself and its claim belongs to the estate. Claims based on the depletion of corporate assets, for example, are generalized in nature.[14]   Only the case trustee may prosecute such claims as an action under Section 544 since it "advances a generalized grievance" for which all creditors stand to benefit.  *Black Elk Energy*, *supra*, 2016 Bankr. LEXIS 2708, *9.   Absent an injury particular or personal to a creditor that is distinct and separate from a loss suffered by the debtor corporation, the claim belongs exclusively to the

---

[12] As the Court does in this Order, counsel analyzed each claim and assigned some to the Trustee, some to YIG, and some as mixed claims.

[13] "Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004), quoted in *In re Lett*, 2021 WL 955910, at *5 (Bankr. N.D. Ga. Mar. 12), *report and recommendation adopted,* 2021 WL 7708553 (N.D. Ga. Nov. 8, 2021).

[14] Other claims for generalized injury include fraudulent transfers, voidable preferential transfers, breach of fiduciary duty, and corporate waste.   Claims for alter ego and veil-piercing present a closer question.   *See Baillie Lumber Co., LP v. Thompson (In re Icarus Holding LLC)*, 391 F.3d 1315 (11th Cir. 2004), *certified question answered,* 279 Ga. 288, 612 S.E.2d 296 (2005), *ruling after answer,* 413 F.3d 1293, 1295 (11th Cir. 2005)("Based on the Supreme Court of Georgia's opinion, we conclude that the alter ego action by the corporation against the principal is allowed under state law.   Thus, the alter ego action here is property of the bankruptcy estate and is subject to an automatic stay").

debtor's estate. *Bond Safeguard Ins. Co. v. Wells Fargo Bank, N.A.*, 2011 WL 13187054, *2 (S.D. Ga. Oct. 21, 2011), *aff'd*, 502 F. App'x 867 (11th Cir. Dec. 21, 2012).[15]

YIG argues that instead of making broad assertions that all the YIG Claims are derivative based on the factual allegations in the State Court Complaint, an analysis of each specific count as it is pled is warranted and the only reasonable way to determine who has proper standing to bring such count. *See In re JMK Constr. Grp., Ltd.*, 502 B.R. 396, 412-13 (Bankr. S.D. N.Y. 2013)(by definition, claims for conversion and unjust enrichment implicate claimant's superior right to possession or ownership). The Court agrees that such an analysis is required here. This conclusion follows because "the fact that creditors in general are harmed does not determine whether a cause of action belongs to the bankruptcy estate; rather, general harm to creditors *necessarily follows* from the fact that the debtor has been injured." *Matter of Educators Grp. Health Trust*, 25 F.3d 1281, 1285 (5th Cir. 1994)(emphasis in original); *see also Mennen, supra*, 248 F. App'x at 113 (citing *Educators Group, supra*).[16]

Therefore, the proper inquiry lies in an evaluation of "the relationship between the debtor and the nature of the injury." *Educators Group, supra*, 25 F.3d at 1285 (analyzing complaint using this test, the court determined some counts belonged to the estate and others belonged to the

---

[15] In *Bond Safeguard, supra*, a claim arising from a scheme designed to cause the debtor to make loans to the defendants was derivative in nature and indirectly harmed all creditors as a result.

[16] In *Mennen*, the Eleventh Circuit upheld a finding that the plaintiff lacked standing to pursue claims for fraud, negligent misrepresentation, false information negligently supplied, and conspiracy concluding that its alleged losses from monies invested in the debtor arose from the same transaction for which the bankruptcy estate filed suit to recover, and the injuries could not be separated.

plaintiffs).[17]  Although the determination of whether a claim is property of the bankruptcy estate is informed by the substance of the claim or nature of the alleged harm, and even though the stated intention of the pleader does not control, the cause of action as it is pled is not completely irrelevant and should be examined in connection with the factual allegations.[18]

The strong-arm powers granted to the Trustee under Section 544(a) are limited in reach to the avoidance of transfers or obligations incurred by a debtor and recovery of "actual or potential property" of the estate, and do not extend to "all the rights and powers of creditors."  *See Flatau v. Johnson (In re Stewart)*, 339 B.R. 524, 528 (M.D. Ga. 2006), citing *Kapila v. Atl. Mortgage & Inv. Corp. (In re Halibi)*, 184 F.3d 1335, 1337 (11th Cir. 1999).[19]  As further recognized in *Palm Beach Finance*, *supra*, trustees must pursue claims for general injuries to prevent the "'rush to pursue the action and receive judgments, thereby circumventing the equality of distribution among creditors that is so fundamental to the bankruptcy scheme.'"  568 B.R. at 888, quoting *Sigmon v.*

---

[17] As discussed in *Gleneagles*, *supra*, in addition to an alleged misrepresentation being made directly to a plaintiff, the plaintiff must also allege that the plaintiff *itself* relied to its detriment on the misrepresentation not the debtor corporation. 344 B.R. at 595-96, discussing *Educators Group, supra*, 25 F.3d at 1285.  In *Gleneagles*, though the misrepresentations were directly made to the plaintiff, the debtor was the entity injured since, had the transfer at issue not been made, all creditors would have benefitted, not just the plaintiff.

[18] Further, direct and derivative claims can arise from the same set of facts.  "A creditor does 'not [however,] state independent claims merely by asserting new legal claims or seeking different forms of relief than' the relief pursued by a debtor…The critical feature is that 'a non-derivative claim arises from the wrongdoer's breach of a separate legal obligation owed to the victim ... that results in an injury particularized as to the victim.'"  *Soundview Elite Ltd.*, *supra*, 565 B.R. at 544 (citations omitted).

[19] For example, YIG cites several cases finding a trustee lacked standing to prosecute claims against a third party for conduct that did not harm the debtor.  *See In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 257 (Bankr. N.D. Fla. 2003)(fraud occurred at expense of customers); *In re Palm Beach Fin. Partners, L.P.*, 568 B.R. 874, 889-90 (Bankr. S.D. Fla. 2017); *see also In re Mattress N More, Inc.*, 231 B.R. 104, 107 (Bankr. N.D. Ga. 1998).

*Miller–Sharpe, Inc. (In re Miller)*, 197 B.R. 810, 814–15 (W.D.N.C. 1996).[20]    Section 544,

however, is not properly read as conferring exclusive standing on a trustee "to bring any [every]

cause of action that may benefit the creditors."    *Id.*    The Eleventh Circuit holds the view that

Section 544 is not without limits in its statutory grant of authority to trustees to pursue creditor

claims.    *See E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 986-87 (11th Cir. 1990)(reviewing

*Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972),

court held trustee lacked standing to bring claims for negligence and conversion held by certain

customer creditors), discussed in *Stewart, supra*, 339 B.R. at 528 n. 5; *Palm Beach Finance, supra*,

568 B.R. at 889.    *See also Gordon v. Harman (In re Harman)*, 520 B.R. 906, 910 (Bankr. N.D.

Ga. 2014).

Further, because of the Debtor's own alleged involvement in the improper conduct at issue

giving rise to the YIG Claims, the Trustee would be subject to the same defenses as the Debtor,

including the doctrine of *in pari delicto* that would bar recovery as to some of the YIG Claims.

*Stewart, supra,* 339 B.R. at 527 (claims under Georgia RICO statute not property of the estate as

debtor had no viable claim against alleged co-conspirators), citing *Official Comm. of Unsecured

Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149-51 (11th Cir. 2006)(analyzing federal

RICO claim).    In this situation, the Defendants as alleged wrongdoers could possibly be insulated

from liability for their conduit to the detriment of the Bankruptcy Estate if standing is restricted

---

[20] Artful pleading of claim that defendant's false representations were made to prevent plaintiff creditor from filing an involuntary petition against debtor did not transform what was effectively a fraudulent transfer claim that belonged to the estate and would not be allowed to go forward and "unravel the bankruptcy process."    *Gleneagles, supra,* 344 B.R. at 596.

to the Trustee who cannot prevail on the claim for this reason.   *See Palm Beach Finance, supra*,
568 B.R. at 890.

### Analysis of Individual Claims for Relief

The test for determining whether a cause of action is property of the estate is whether it
alleges compensable injury to a creditor arising indirectly and derivatively from an injury sustained
directly by the debtor affecting all creditors, for which the debtor could have commenced a claim
under applicable law, or whether the claim alleges a distinct harm suffered by an individual creditor
separate from the debtor and other creditors.   *Bond Safeguard, supra*, 502 F. App'x at 869
(citations omitted).   At the heart of the YIG Claims as framed is the allegation that through YIG's
reliance on misrepresentations made by the Defendants, YIG suffered unique personalized injuries
in paying for services it never received.   Allegations related to the assertion that the Defendants
"pillaged First Leads while enriching themselves" (Subsection F, pp. 10-ff), thus directly harming
the Debtor, however, also comprise a substantial portion of the State Court Complaint.   *See also*
¶ 7 ("looting First Leads"), ¶ 31 ("using First Leads as a piggy bank"), ¶ 32 (commingling and
using Debtor's funds).[21]   Any recovery for claims by YIG based on fraudulent transfers of the
Debtor caused by and made to the Defendants in violation of their duties to the Debtor would arise
from generalized injury to all creditors and belongs to the Bankruptcy Estate, as it is derivative in
nature.

To determine whether the Trustee or YIG has the right and the standing to enforce a specific
claim, and whether the underlying claim is general or particular in nature, beyond any description

---

[21] Allegations that Ms. Stephens "used money paid by YIG to First Leads" does not necessarily imply only YIG's
funds were used or rule out that other funds were similarly used.   State Court Complaint, ¶ 78.

in the parties' motion papers, the Court must examine each count of the State Court Complaint considering the actual facts as pled and the type of damage alleged.   This review is as follows:

Count I – Fraud:   To the extent limited to damages caused by the breach of the parties' agreement, this claim is an individualized, personal claim of YIG arising from alleged false representations specifically targeted at YIG by the Defendants designed to deceive YIG into continuing to order and pay for leads the Debtor did not provide.   The Defendants allegedly knew these statements were false when made to YIG.   YIG also alleges it incurred business losses (to be proven at trial) from independent insurance agents and agencies who depend on YIG for leads as well as for damages to its business reputation, which constitutes direct, personal harm.

Count II – Negligent Misrepresentation: This is an individualized claim of YIG based on alleged false statements made to YIG in breach of a legal duty of care owed to YIG (as limited to that extent) through direct communications by the Defendants that lead orders would be fulfilled upon which YIG justifiably and detrimentally relied.

Count III – Conversion and Trover.   This claim belongs to the Bankruptcy Estate, to be pursued by the Trustee, for the recovery of monies paid to the Debtor and used by the Defendants for non-corporate reasons.   Although the Defendants allegedly denied YIG the right to possession of its funds, as stated at the Hearing, not all funds paid to the Debtor came from YIG.

Count IV – Conspiracy.   This is a mixed claim.   The fraud component and tortious interference with business and/or contractual relationship components are the claim of YIG.   The conversion and trover component seeks the recovery of money paid to the Debtor and used by the Defendants, and since it is based on generalized grounds, it belongs to the Estate.   Thus, to the

extent this claim is based on fraud, tortious interference, and conspiracy to commit fraud, it belongs to YIG.

Count V – Georgia Civil RICO.   This is an individualized claim of YIG to the extent the Debtor is alleged to have participated in a pattern of racketeering activity with the Defendants since in that case the Trustee would be subject to the same defenses that could be asserted against the Debtor under applicable state law.   *See Stewarts, supra*, 339 B.R. at 527-28.   Further, the predicate acts upon which this count is based appear individualized to YIG as arising from fraudulent inducement and its losses resulting therefrom.

Count VI – Promissory Estoppel.   This is an individualized claim of YIG arising from an allegedly fraudulent or negligent misrepresentation of facts in connection with the promise made by the Defendants to YIG in abuse of their longstanding, personal relationship leading to direct harm from damages incurred in paying refunds to associated independent insurance agents and agencies and from loss of business and commissions.

Count VII – Unjust Enrichment.   This claim belongs to the Bankruptcy Estate for the recovery of monies improperly transferred from the Debtor to the Defendants.   YIG's alleged injury derives from the injury to the Debtor.

Count VIII – Money Had and Received.   This claim similarly belongs to the Bankruptcy Estate for the recovery of monies improperly transferred to the Defendants by the Debtor.

Count IX – Tortious Interference with Business Relations.   This is the individualized claim of YIG because the asserted damages are particular to YIG based on referenced contracts.

14

Count X – Tortious Interference with Contractual Relations.   This is also the individualized claim of YIG because the asserted damages are particular to YIG based on referenced contracts.

Count XI – Equitable Accounting.   This claim belongs to the Bankruptcy Estate, requiring the untangling of fraudulent transfers made by the Debtor (through the Defendants in alleged breach of their fiduciary duties that stem from their relationship with the Debtor) that harmed the Debtor directly and indirectly harmed creditors such as YIG.

Count XII – Implied and/or Constructive Trust.  This claim belongs to the Bankruptcy Estate concerning funds in Debtor's possession that were improperly diverted.  Although YIG alleges that it was specifically targeted through the Defendants' misrepresentations and any funds it paid to the Debtor benefitted creditors, this claim is grounded in injury to the Debtor.   The funds were held by the Debtor and then transferred to the Defendants.

Count XIII – Expenses of Litigation, Attorneys' Fees, and Costs.   This is a mixed claim given the fact that some of the counts allege personal damages and some of them allege generalized injury for the Trustee to pursue.   Both the Trustee and YIG may assert this claim in connection with fees and costs incurred for prosecution of the claims identified herein as ones it has standing to pursue.

Count XIV – Punitive Damages.   This is also a mixed claim for similar reasons.   To the extent that this claim seeks such damages related to the preceding claims as they allege injury personal to YIG as indicated above, they belong to YIG.

Finally, the Trustee asserts that YIG's intentional pursuit of claims belonging to the Bankruptcy Estate constitutes a willful violation of the automatic stay entitling the Trustee to an

15

award of damages for contempt. Such relief may be[22] appropriate when a creditor knowingly launches a lawsuit seeking to recover on claims rightfully and clearly belonging to a bankruptcy estate and its creditors, through artful pleading or otherwise.   Although some of the YIG Claims as set forth in the State Court Complaint are property of the Bankruptcy Estate for the Trustee, and not YIG, to pursue, as discussed above, some of the YIG Claims do belong to YIG.   Based on this assessment, the Court does not find sufficient grounds to support an award of sanctions for contempt in connection with injury to the Bankruptcy Estate at this time.   For similar reasons, no attorneys' fees are awarded to either the Trustee or YIG.

### Conclusion

In view of the foregoing, it is hereby

**ORDERED** that the Motion for Sanctions is **GRANTED IN PART AND DENIED IN PART.**   The Motion for Sanctions is **GRANTED** to the extent that YIG is hereby

**ORDERED** to dismiss immediately the claims contained in the State Court Complaint to the extent identified herein as belonging to this Debtor's Bankruptcy Estate to be asserted by the Trustee, to wit; Counts III, IV (as delineated herein), VII, VIII, XI, XII, along with XIII and XIV (as delineated herein).   It is further

---

[22] The Trustee's ability to seek sanctions or damages for a stay violation in these circumstances may not be entirely clear.  *See In re McKeever*, 550 B.R. 623, 643 (Bankr. N.D. Ga. 2016).   However, it is not necessary to decide whether the Trustee has such power in this case, since relief would not be appropriate in these circumstances because not all the claims asserted by YIG belong to the Trustee and the analysis of who owns which of the YIG Claims is not a simple and straightforward one.

**ORDERED** that the Motion for Sanctions is **DENIED** to the extent that YIG will not be held in contempt and no sanctions are awarded.[23]

The Clerk is directed to serve a copy of this Order upon the Debtor, counsel for the Debtor, the Chapter 7 Trustee, counsel for the Trustee, counsel for YIG, counsel for the Defendants, and counsel for the United States Trustee.

**[END OF DOCUMENT]**

---

[23] The Trustee further requested that if the Court found some of the YIG Claims personal to YIG that YIG be enjoined in their prosecution.   On review, this request is denied.